## UNITED STATES v. LA GRANGE GROCERY CO.

District Court, N. D. Georgia. March 19, 1929.

No. 932.

See, also, 24 F.(2d) 840.

Clint W. Hager, U. S. Atty., and C. P. Goree, Asst. U. S. Atty., both of Atlanta, Ga.

Hoke Smith and F. M. Bird, both of Atlanta, Ga., and Hatton Lovejoy, of La Grange, Ga., for defendant.

SIBLEY, District Judge. The suit was originally brought to recover a balance claimed by the United States as due for the purchase of surplus supplies sold to the La Grange Grocery Company over and above an amount conceded to be due to the grocery company on account of a tax refund allowed by the Commissioner of Internal Revenue. The answer denied liability for the supplies, and prayed judgment for the tax refund,

with interest. The United States abandoned its claim for the supplies, and on August 3, 1928, sent a check upon the Treasury for the allowed refund, without interest. The case has been submitted to the court without a jury upon the single question of the allowance of interest.

I find the facts to be that the Commissioner of Internal Revenue, on May 15, 1925, allowed a claim for refund of 1919 taxes in a sum of $1,295.88. Pursuant to the regular practice, this allowance was, by him, sent for adjustment and settlement to the General Accounting Office, where, instead of certifying the refund for payment, it was offset against the charge claimed by the United States for surplus supplies. The Commissioner, on July 21, 1925, notified La Grange Grocery Company of the offset, and advised it to address all further correspondence to the Comptroller General of the United States. On October 23, 1925, the grocery company, refusing to agree to the offset, was advised by the Comptroller that the offset would be insisted upon, and that the balance of the claim of the United States was being referred to the Department of Justice for enforcement. This suit followed, with the consequences first above stated.

■■ It is conceded that interest is not recoverable against the United States, unless allowed by some statute. 31 USCA § 227, being the Act of March 3, 1875, is pointed out as the statute allowing interest here. That act made it the duty of the Secretary of the Treasury, when any judgment or other duly allowed claim against the United States was presented to him for payment, to withhold payment to the extent of any counterclaim due to the United States, and to cause legal proceedings immediately to be commenced to enforce the claim of the United States; but it provided that, if the amount recovered was less than the amount so withheld, the balance should be paid, with 6 per cent. interest for the time it was so withheld. The opposing contention, based upon the Comptroller General's decision A–19730, dated November 2, 1927, is that the offset was not made under 31 USCA § 227, but under 31 USCA § 71, which requires all claims and demands against the United States to be settled and adjusted in the General Accounting Office, and that this claim was never presented to the Secretary of the Treasury for payment within the meaning of section 227.

When the act of 1875, now section 227, was passed, section 71 appeared in the Revised Statutes of 1873 as section 236, except that the adjustment and settlement was to be done in the Treasury Department. The machinery of settlement then consisted of a Comptroller of the Treasury, with his assistant and six auditors. No doubt a *right* of offset existed before the act of 1875, but that act made it the affirmative duty of the Secretary of the Treasury to make it, and provided for the consequences in the matter of interest. In order that interest should follow an improper offset, it was unnecessary to present the ·demand for payment to the Secretary of the Treasury in person, as it was unnecessary that he, in person, should make the offset. The Comptroller and the Auditor made the offsets, and a presentation in the Treasury Department for adjustment and payment was all that was meant by the words: "When * * * any claim * * * shall be presented to the Secretary of the Treasury for payment." The purpose of the act was not to involve the Secretary personally, but to raise a duty in his department to offset counterclaims, and to fix the fair consequences in the matter of interest.

When, by the Act of June 10, 1921, the General Accounting Office, headed by the Comptroller General, was organized, outside and independent of the Treasury Department, and R. S. § 236, was amended (31 USCA § 71) to require all settlements and adjustments to be made in that office, instead of in the Treasury Department; the duties of the Comptroller and. his auditors being transferred entirely to the General Accounting Office, persons having claims against the United States were required to present them for allowance and payment there, instead of to the Secretary of the Treasury. Payment is now to be made only on warrants countersigned by the Comptroller General. 31 USCA § 147. He designates persons to do the countersigning. Section 56. The right to make offsets under section 71, and the duty to make them under section 227, is now in him, and not in the Secretary of the Treasury. The duty to have suit filed was, under section 227, on the Secretary; but by section 93 such duty is now on the Comptroller General. All the functions of the Secretary under section 227 are now vested in the General Accounting Office.

As a practical matter, a tax refund claim cannot now be literally presented to the Secretary and by him be offset. Such a refund must be applied for to the Commissioner of Internal Revenue, and, if allowed by him, it is by him sent to the General Accounting Office, and, if any offset exists, it is there made and the taxpayer notified, just as was

done in this case. The Secretary, deprived of his Comptroller and Auditors, has no means of knowing of or making offsets. The judgments against the United States mentioned in section 227 are now, by section 228, expressly to be paid only through the General Accounting Office. If section 227 is to be held as still applying to claims presented to the Secretary only, it is incapable of any practical application. It is rather to be construed as a part of the mass of legislation in which the General Accounting Office has taken the place of the auditing activities formerly in the Treasury Department. See section 44. The interest liability attaches to offsets made by the General Accounting Office, just as it did formerly to those made in the Treasury Department.

Judgment will therefore be awarded for interest at 6 per cent. from May 15, 1925, upon the amount of $1,295.88 improperly withheld.