Mr. Justice CLIFFORD
delivered-the opinión of the court; “
Additional compensation is claimed by the respective appellees, as employés in the civil.service of the United Stages in this city, by virtue of the joint resolution of -the' ^8t|i of. February, 1867, which provides that twenty per. cent., addi.tioual compensation shall be allowed and paid to certain' classes of such employés .in Washington, as therein desig-' nated. -. , "
Civil officers, whose annual salaries do not exceed $3500,- and all clerks, whether temporary or permanent, and messengers and watchmen, are specifically named in the resolution *184 including enlisted men detailed as ¿ueh, and the provision is. that the additional allowance shall be computed upoTi th,e gross .amount'of the compensátion received .by such employe as fixed by law, or where no. salary is fixed by law, upon the pay of the employe for thatfisoal year, aiuVtbat the benefit of the resolution shall extend to employés, male and female, in the 'executive mansion-and in any of the following named departments, or' any bureau or division.' thereof, to wit: state, treasury,, war, navy, interior, post.offiee, attorney-general, and agricultural, and including civil officers and all elerks'and employés, male atid female, in the offices of "the coast-survey, naval observatory, navy-yard, arsenal, paymaster-general, bureau of refugees, freedmen, and abandoned lands, quartermasters, eapitol and treasury ‘extension", city post-office, and commissioner of public buildings; to.the photographer and assistant photographer of the •Treasury Department, to the superintendent of meters, and to lamp-lighters under the commissioner of public buildiugs.
Judgments rendered by the Court, of Claims, involving controversies of a like cha’racter, were removed into this court by appeal on a former occasion,* when it became the duty of this court to examine the joint resolution in question and to determine what, in the judgment of the court, is its actual scope and. true intent and meaning, as applied to the several cases then before the court:
Attempt was then made in argument to convince tne court that the' words of the resolution, “in the civil service of -the United States,” as there employed, should be . restricted to persons filling offices or holding appointments established ly law, but the court rejected that narrow construction of the phrase and unanimously decided that neither a commission, nor a warrant of appointment is necessary to entitle an -.employe to the benefits of the joint resolution, provided he was actually and properly employed in the ex-ecutive mansion, or' in any of the.departments, or in any. bureau, or division,thereof, or in any-of the offices specifi *185 cally designated in tbe' said joint resolution; that persons so , employed here are properly to be regarded as employés in the civil service of the United States within the true intent and meaning of that phrase'as there used, if they were enU ■ployed by the head,of the. department, or of the bureau or any division'of-the department, charged with that duty and authorized to make such- contracts and fix the compensation of the person or persons employed, even though the particular employment may not be designated in an appropriation act.
Such was the unanimous opinion of the court as. to the-true construction of the joint resolution under consideration on-that occasion, and the court, with equal unanimity, adheres to that conclusion in the cases before the court.
. .Many persons, not employed as clerks or-messengers of a department, are in the public service by virtue of an -em-. ployment by the head of a department, or by the head of some bureau of a department or division thereof authorized to make such contracts, and such persons are as much in the civil service of the United States, within the njeauing of the joint resolution, p,s the clerks and messengers employed in the.rooms of the department budding.*
Much discussion of that' topic, however, is unnécessary, as the question was explicitly determined in our former decision, to which reference is made for a full exposition of t'he present views of the court upon that subject.
Grant all that, still it is insisted that the joint resolution has beeu repealed since that’ decision was made, and that the: effect, of the repealing act is to bar the right of recovery in all. of the cases under consideration; in support of which proposition reference is made to the fourth -section of the Appropriation Act of.the 12.th of July, 1870, which enacts that all acts and joint resolutions-,or parts thereof, and all' resolutions of either house of Congress granting extra com *186 peusation or pay, be and the same are hereby repealed, .to take eflect on the let day of July in the sanie year.*
Two propositions are submitted by the United States, based upon, that repealing act, to show that the respective appellants in these cases cannot recover: (1.) That the repeal of the.joint resolution prevents the officers of the treasury from paying the additional compensation after the date of its passage. ■ (2.) That the repealing act, even if the resolution created an implied contract aud gave jurisdiction to the Court of' Claims to enforce it, divested the C'ourt of Claims of all jurisdiction in such controversies. ...
Both of the propositions,jas it seems to the court, overlook the .material facts of the case, all of which are undisputed. They are as follows: (1.) That the joint resolution ceased to be operative at the end of the fiscal year in which it was enacted. (2.) That such additional compensation is allowed only for that year. (3.) That, the claims in these cases are only for such additional, compensation during that fiscal year. (4.) That the joint resolution ceased to be operative at the close of that fiscal year.' (5.) That the right to such additional compensation became fixed and vested when the year’s services were faithfully performed. (6.) That the repealing act, which it is supposed constitutes a bar to the cause of action in these eases, did' not become a law until-more than three years after the right to the additional- compensation had become fixed and vested, and the joint resolution had ceafeed to be operative in respect to prospective services.
Yiewed in the light of these suggestions grave doubts' arise whether the repealing act in question applies at all to the joint resolution, as .it is difficult to believe that Congress would deem it necessary to repeal á provision which had expired by its own limitation more .than three years before they acted upon the subject.
.Mere supererogation, however, it is said, cannot properly be' imputed to the National legislature, and there Would be *187 much force in the suggestion if the joint resolution had at that time been in operation and had been the only provision of the kind to which the descriptive words of the repealing act would apply, but the fact is plainly otherwise, as there are several acts of corresponding import which were in full force at that date, and which, it must be admitted, are unquestionably included within those descriptive words.*
Enough .appears in the repealing act itself to show that Congress did not intend to give it any retroactive effect, except as therein provided, as the act expressly enacts'that the provision in question shall take effect on the 1st day of July next before the day it was approved, which affords a demonstration that Congress never intended that it should retroact to any other or greater extent.†
Courts of jnsticé agree that no statute, however positive in its terms, is to be construed as designed to interfere with existing contracts, rights of actions, or with vested rights, unless the intention that it shall so operate is expressly deared or is to be necessarily implied, and pursuant to that rule courts will apply new. statutes only to future cases, unless there is something in the nature of the case or in the ■language of the new provision which shows that they were intended to have a retroactive operation. . Even though the words of a statute are broad enough’ in their literal extent to comprehend existing cases, they must yet be construed as applicable only to eases that may hereafter arise, unless the language employed expresses a contrary intention in unequivocal terms.‡
Such á law, if passed by a State, and construed to have the effect claimed for it in this case by the appellants, would be unconstitutional and void; but it is not necessary to discuss any such proposition in this ease, as there is not a word in the repealing act to support the conclusion that Congress *188 intended to rescind atiy antecedent contract, br to- enact any .bar to the right of recovery in such cases where the service had .been faithfully performed before the repealing'act was •passed.
Apply those rules to the .cases before the court and it is clear -the appellees in the first twelve are entitled to recover, as the finding of the court below shows that the claimanti-n each of those cases is included within the joint resolution as construed and defined by this court.
'.But the other two claimants, to wit, Hoffman and Bell, are not entitled to recover, the former because he was employed as sexton at the Arlington Cemetery, in the State of Virginia, and not “in Washington,” and because, consequently,, his claim is not within the words of the joint resolution. Nór is the latter, because he was not in the. civil service of the United States within the meaning of tha't provision, as he was a pliite-printer, working under a contract at-an agreed rate “per one hundred sheets of face printing and per one hundred sheets of back printing.” He employed an assistant, for whose compensation he was responsible; but the finding of the subordinate court shows that •the assistant was paid directly by the disbursing officer, and that the sum thus paid was deducted from the gross earnings of the.claimant-. Suffice it to say that the claimant was a contractor, and that he employed another to do most op all of the work, and in-the judgment of the court such a contractor is not entitled to the additional compensation allowed and directed to be paid by the joint resolution under consideration.
Judgment affirmed in the first twelve cases-.
- Judgment- reversed in the last two cases, and the causes remanded, with directions to dismiss the respective petitions.

 Twenty per Cent. Cases, 13 Wallace, 576.

 United States v. Belew, 2 Brockenbrough, 280; Graham v. United States, 1 Nott & Huntington, 380: Commonwealth v. Sutherland, 3 Sergeant & Bawle, 149.

 19 Stat. at Large, 250.

 12 Stat. at Large, 587; 14 Id. 206; 15 Id. 77.

 16 Id. 250.

 Potter’s Dwarris, 161; Wood v. Oakley, 11 Paige, 403; Butler v. Palmer, 1 Hill, 325; Jarvis v. Jarvis, 3 Edwards, 466 ; McEwen v. Bulkley, 24 Howard, 242; Harvey v. Tyler, 2 Wallace, 329; Blanchard v. Sprague, 3 Sumner, 535; United States v. Heth, 3 Cranch, 399.