THE SAN JUAN.

(District Court, S. D. New York. February 10, 1917.)

SEAMEN ⬤═4—ACCOMMODATIONS—CONSTRUCTION OF SEAMEN'S ACT.

In Seamen's Act March 4, 1915, c. 153, § 6, 38 Stat. 1165, amending Act March 3, 1897, c. 389, § 2, 29 Stat. 688, and requiring certain space and accommodations for the crew to be provided on "all merchant vessels of the United States the construction of which shall be begun after the passage of this act," the words "after the passage of this act" refer to the act of 1915 and not to the act of 1897, and the provisions are not retroactive, and do not apply to a vessel built between 1897 and 1915.

Petition of the New York & Porto Rico Steamship Company, owner of the Steamship San Juan, for a writ of mandamus. Writ granted.

Burlingham, Montgomery & Beecher, of New York City, for petitioner.

H. Snowden Marshall, U. S. Atty., and John A. Hunter, Asst. U. S. Atty., both of New York City, for respondent.

MANTON, District Judge. If it were not for the opinion of the Attorney General of the United States, dated July 26, 1916, I should have no hesitancy in granting this application.

It appears by the petition that the local inspectors of steam vessels refused to grant a certificate in inspection and approval to the San Juan, which is about ready to sail from this port, on the sole ground that the said steamship fails to conform to section 6 of the act of Congress of March 4, 1915 (38 Stat. 1164), known as the Seamen's Act. Their reasons are as follows:

(a) Insufficient cubic space in firemen's sleeping quarters forward. (b) Berths in tiers of three instead of two. (c) Insufficient wash basins and sinks. (d) No shower baths or hot and cold water supply. (e) No suitable compartment for hospital.

Section 6 of said act provides in part as follows:

"Sec. 6. That section 2 of the act entitled 'An act to amend the laws relating to navigation,' approved March third, eighteen hundred and ninety-seven, be, and is hereby, amended to read as follows:

"'Sec. 2. That on all merchant vessels of the United States the construction of which shall be begun after the passage of this act, except yachts, pilot boats, or vessels of less than one hundred tons register, every place appropriated to the crew of the vessel shall have a space of not less than one hundred and twenty cubic feet, and not less than sixteen square feet, measured on the floor or deck of that place, for each seaman or apprentice lodged therein, and each seaman shall have a separate berth and not more than one berth be placed one above another; such place or lodging shall be securely constructed, properly lighted, drained, heated, and ventilated, properly protected from weather and sea, and, as far as practicable properly shut off and protected from the effluvium of cargo or bilge water. And every such crew space shall be kept free from goods or stores not being the personal property of the crew occupying said place in use during the voyage.

"'That in addition to the space allotment for lodgings hereinbefore provided, on all merchant vessels of the United States which in the ordinary course of their trade make voyages of more than three days' duration between ports, and which carry a crew of twelve or more seamen, there shall be constructed a compartment, suitably separated from other spaces, for

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

hospital purposes, and such compartment shall have at least one bunk for every twelve seamen, constituting her crew, provided that not more than six bunks shall be required in any case. * * *

" 'All merchant vessels of the United States, the construction of which shall be begun after the passage of this act having more than ten men on deck must have at least one light, clean, and properly ventilated washing place. There shall be provided at least one washing outfit for every two men of the watch. The washing place shall be properly heated. A separate washing place shall be provided for the fireroom and engineroom men, if their number exceed ten, which shall be large enough to accommodate at least one-sixth of them at the same time, and have hot and cold water supply and a sufficient number of wash basins, sinks, and shower baths.' "

It will be noted that the words of section 2 of this act read "which shall be begun," and must denote futurity. Do the words "after the passage of this act" refer to the act of March 4, 1915, or refer back to the act of March 3, 1897? The act of March 4, 1915, amends the act of 1897. The ship in question was built in 1900, and if the act of March 4, 1915, refers back to the act of 1897, then the San Juan must meet the requirements of the act of 1915, and the local inspectors are correct in refusing the certificate.

The question whether section 20 of this act is retroactive was recently presented for decision before Judge Hazel. In re Tonawanda (D. C.) 234 Fed. 198. It was held a provision of the Seamen's Act abolishing the fellow servant doctrine was not retroactive, and therefore no aid for a recovery for personal injuries sustained prior to the effective date of the Seamen's Act. Uniformly the federal and state courts are slow to incorporate words into the statute which will permit of a retroactive intention. White v. U. S., 191 U. S. 545, 24 Sup. Ct. 171, 48 L. Ed. 295.

In the Twenty Per Cent. Cases, 20 Wall. 179, 22 L. Ed. 339, Judge Clifford said:

"Courts of justice agree that no statute, however positive in its terms, is to be construed as designed to interfere with existing contracts, rights of action, or with vested rights, unless the intention that it shall so operate is expressly declared or is to be necessarily implied, and pursuant to that rule courts will apply new statutes only to future cases, unless there is something in the nature of the case or in the language of the new provision which shows that they were intended to have a retroactive operation. Even though the words of a statute are broad enough in their literal extent to comprehend existing cases, they must yet be construed as applicable only to cases that may hereafter arise, unless the language employed expresses a contrary intention in unequivocal terms."

Another sound statement that may well be adhered to in the interpretation of statutes is found in Endlich on Interpretation of Statutes, §§ 271, 272, where it is said:

"Indeed, the rule to be derived from the comparison of a vast number of judicial utterances upon this subject seems to be that, even in the absence of constitutional obstacles to retroaction, a construction giving to a statute a prospective operation is always to be preferred, unless a purpose to give it a retrospective force is expressed by clear and positive command, or to be inferred by necessary, unequivocal, and unavoidable implication from the words of the statutes taken by themselves and in the connection with the subject-matter, and the occasion of the enactment, admitting of no reasonable doubt, but precluding all question as to such intention. * * * Even where there is that in the statute which would seem upon other principles

241 F.—19

of interpretation, to require a retrospective construction, the presumption against the same, in the absence of an intention otherwise demonstrable to give the statute such an effect, will overcome the influence of such rules."

Section 18 of the act of March 4, 1915, provides that this act shall take effect as to all vessels of the United States eight months after its passage. The opinion of the Attorney General concludes with the statement that:

"In my opinion, therefore, the words 'this act' shall be construed to refer to the act of March 3, 1897, the necessary effect of which will be to make the space requirements of the law apply to all vessels constructed after the passage of that act."

If the reasoning of the Attorney General as expressed in his opinion be correct, then ships built prior to the act of 1897, which are now in use, need not comply with the requirements of the 1915 act, but all ships built between 1897 and 1915 must comply with the 1915 act, as must ships built after 1915.

There is no doubt of the humane provisions of this act for the health and comfort of the seamen, but in construing this statute the court must look to the language and phraseology employed. I do not think that "this act," as referred to in the 1915 act, denotes anything but futurity; to give it any such meaning as contended for here by the government would make it retroactive.

Therefore the petitioner is not obligated to make the changes in the San Juan as required by the local inspectors of steam vessels, and a writ of mandamus will issue.