In re HARBOUR TOWN ASSOCIATES, LTD., a Tennessee limited partnership dba Harbour Town Apartments, Debtor.

Bankruptcy No. 389–00693.

United States Bankruptcy Court, M.D. Tennessee.

May 17, 1989.

William R. O'Bryan, Jr., Trabue, Sturdivant & DeWitt, Nashville, Tenn., for State Mut. Life Assur. Co. of America.

G. Rhea Bucy, Gullet, Sanford, Robinson & Martin, Nashville, Tenn., for debtor.

## ORDER

GEORGE C. PAINE, II, Chief Judge.

This matter comes before the court on State Mutual Life Assurance Company of America's motion to prohibit use of cash collateral and for other relief. The issues presented are: (1) what rights to rents does a mortgagee have at the commencement of a Chapter 11 case under a recorded assignment of rents and (2) can a mortgagee improve its position post petition under § 546(b).

The following constitute findings of fact and conclusions of law. Fed.R.Bankr.P. 7052, 9014.

State Mutual holds a first lien through a deed of trust on the debtor's principal asset, the Harbour Town Apartments. The parties executed an assignment of rents contemporaneously with the deed of trust. The assignment authorizes State Mutual, upon a default, at its option, to enter the property and collect the rents on behalf of the debtor. Prior to filing of the petition in this case on January 31, 1989, the debtor had defaulted, but State Mutual had taken no steps to take possession of the property or of the rents, or to have a receiver appointed in state court to collect the rents.

On February 13, 1989, State Mutual filed a notice pursuant to § 546(b) in an effort to perfect its interest in future rents. State Mutual now seeks to prohibit the debtor from using the rents because State Mutual claims that it has a perfected security interest in the rents.

■■■ The resolution of these issues largely depends on state law concerning the efficacy of assignments of rents. Under Tennessee law an assignment of rents is presumed to be a pledge of rents as security. Such a pledge is not operative against the rights of the mortgagor to use rents or the rights of third party creditors to levy on rents until the holder of the pledge takes affirmative steps either to gain possession of rents or the leasehold, or to commence judicial proceedings to sequester the rents. *TSC Industries, Inc. v. J.P. Michael Tomlin,* Docket No. 84–1122–III. (Chancery Court for Davidson County Tennessee, entered February 6, 1987) (slip opinion).

■■■ An absolute assignment of rents would not be a pledge and would be superior to the mortgagor and third party creditors. To be an absolute assignment the parties must intend that the assignment

vest rights to rents in the assignee automatically upon default without requiring the assignee to take any additional steps. *Id.*

■ Several facts demonstrate that the parties here intended pledge rather than an absolute assignment. The assignment states that its purpose is for additional security on the loan; the debtor collected the rents and retained all rents; at default State Mutual, at its option, could take possession of the rents. Under *TSC Industries, Inc.* the assignment is clearly a pledge of rents as security.

At the time of the filing of the petition, State Mutual had not taken steps to make its pledge of rents operative. Thus, under applicable non-bankruptcy law, on the day the debtor filed bankruptcy it could use have used rents free of any claim by State Mutual, and third party judgment creditors could have levied on the rents and gained possession of the rents. The debtor's and third party creditor's priority would have applied to current rents only. State Mutual, absent the bankruptcy, could still have perfected its rights to future rents by taking appropriate steps, i.e. possession of the property, possession of the rents or commencement of judicial proceedings. *TSC Industries, Inc.* •

■ The filing of bankruptcy, however, cuts off State Mutual's ability to improve its position in the rents. Two separate powers conferred on the debtor by the Code give it control over future rents: (1) its authority to use future income of the estate free of security interests; and (2) its authority to assert the rights that a judicial lien creditor would have at the commencement of the case.

Under § 552(a) the debtor-in-possession generally may use property that the estate acquires after the commencement of the case free of any prepetition security interest. This general rule does not apply to prepetition security interests that attach to certain types of property, including rents, "to the extent provided by such security agreement and by applicable non-bankruptcy law." 11 U.S.C. § 552(b) (Supp. V 1987). State Mutual had a prepetition security agreement that purported to apply to future rents, but under applicable non-bankruptcy law the debtor's right to use rents at the commencement of the case was superior to that interest. Thus, the debtor-in-possession, based solely on § 552, was entitled to use all future rents on the day the case commenced.

Section 552 alone does not eliminate State Mutual's pledge; the pledge would exist, but would remain inferior to the debtor-in-possession's position in the rents at the commencement of the case. *In re Prichard Plaza Associates Ltd. Partnership*, 84 B.R. 289, 299–301 (Bankr.D.Mass 1988). Any attempt by State Mutual to improve its position in rents would violate the automatic stay. 11 U.S.C. § 362 (Supp. V 1987). No exception to the stay would authorize State Mutual to take any action to affect the debtor's rights under § 552 without first securing relief from the stay.

■ Relief from the stay, however, would not be meaningful because the debtor-in-possession under § 544 avoids State Mutual's pledge completely. Section 544(a) authorizes the debtor-in-possession to avoid any transfer that a judicial lien holder could avoid at the commencement of the case. 11 U.S.C. § 544(a) (Supp. V 1987). A judicial lien holder's rights would be superior to State Mutual's on that date. State Mutual argues that the post-petition filing of its § 546(b) notice prospectively overcame the debtor's rights under § 544 to future rents. Even if correct this notice would not affect the debtor's rights under § 552. But State Mutual is mistaken.

Section 546(b) limits the debtor's power under § 544 to avoid transfers. The debtor's power under § 544 is, "subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." 11 U.S.C. § 546(b) (Supp. V 1987). If, under state law, such perfection is made by seizure or commencement of an action, the creditor can perfect by filing a notice in the bankruptcy. *Id.*

The exception created by § 546(b) does not apply in this case. The exception only applies to those situations in which a creditor's perfection after commencement of the case would, under state law, ordinarily be effective as of a date before the commencement of the case.

The legislative history makes this clear. The Senate Report states, "The rights granted to a creditor under [§ 546(b) ] prevail over the [debtor-in-possession] only if the transferee has perfected the transfer in accordance with applicable law, and that perfection relates back to a date that is before the commencement of the case." S.Rept. No. 989, 95th Cong., 2d Sess. 86 (1978); accord, H.Rept. No. 595, 95th Cong., 1st Sess. 371 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5872, 6327.

The Senate report then gives as an example a purchase money security interest under the UCC. Under § 9–301(2) a purchase money security interest is effective as of the date of purchase if a financing statement is filed within ten days of delivery. S.Rept. No. 898, at 86. In this example, § 546(b) authorizes the lien holders to give notice or take necessary steps to perfect and that perfection becomes effective as of the date it would become effective absent the bankruptcy. If that date is before the filing of the petition, the interest so created is superior to the debtor's avoidance powers under § 544. Unlike this example State Mutual's attempt to perfect would have no such retroactive effect.

A number of courts agree with this result. In re TM Carlton House Partners, Ltd., 91 B.R. 349 (Bankr.E.D.Pa.1988); In re Prichard Plaza Assoc., Ltd. Partnership, 84 B.R. 289 (Bankr.D.Mass.1988); In re Hamlin's Landing Joint Venture, 77 B.R. 916 (Bankr.M.D.Fla.1987).

State Mutual relies heavily on its belief that the Fifth Circuit disagrees with this court's opinion. In re Casbeer, 793 F.2d 1436 (5th Cir.1986); Wolters Village, Ltd. v. Village Properties, Ltd., 723 F.2d 441 (5th Cir.), cert. denied 466 U.S. 974, 104

S.Ct. 2350, 80 L.Ed.2d 823 (1984). First, these cases do not consider § 552 at all. Second, the Fifth Circuit in Casbeer agrees with this court's interpretation of the relationship between § 546(b) and § 544. The Fifth Circuit concludes that for § 546(b) to apply, "[T]exas law must authorize the creditor's perfection to relate back to a time before Casbeer filed his bankruptcy petition and, as a debtor-in-possession, assumed the status of a lien creditor or bona fide purchaser." In re Casbeer, 793 F.2d at 1443.[1]

State Mutual has cited other cases that disagree with this court's interpretation of § 546(b). E.g., In re Sampson, 57 B.R. 304 (Bankr.E.D.Tenn.1986). This court has considered those opinions and finds them unpersuasive. Congress intended § 546(b) to create a very small exception for those lien holders to which state law gives the authority to perfect liens retroactively. The pledge of rents as security under Tennessee law simply does not fall into that category.

The court is also aware that this opinion is inconsistent with prior statements by Judge Keith M. Lundin of this court in Vanderbilt Plaza Ltd. v. Travelers Ins. Co. (In re Vanderbilt Plaza, Ltd.), Adv. No. 387–0214, (Bankr.M.D.Tenn. May 12, 1988). Those statements, however, were made in an order that was not final and that was under reconsideration when the parties settled the matter. Unfortunately Judge Lundin was not given an opportunity to reconsider this question to provide the court the benefit of his wisdom.

However, this opinion is consistent with Judge Lundin's statements in a more recent case. In re Aztec Co., Doc. No. 388–05495 (Bankr.M.D.Tenn. March 14, 1989). Judge Lundin applied Florida law to hold that a mortgagee perfected an assignment of rents by sending a notice of default prepetition to the debtor. A Florida statute authorized perfection by such notice. Tennessee has no such statute. Once perfected prepetition the debtor

---

**1.** The Court found that under Texas law and the terms of the assignment of rents in that case, the § 546(b) notice had retroactive effect. Under Tennessee law the notice in this case would have had no retroactive effect.

could not avoid the mortgagee's security interest in the rents. Had State Mutual taken the necessary steps under Tennessee law to perfect its assignment prepetition, it, too, would have had an unavoidable interest in the rents. But it did not.

This result does not leave State Mutual unprotected. It holds the first lien on the debtor's principal asset, the Harbour Town Apartments. Furthermore, if appropriate, it may be entitled to specific relief, such as adequate protection or to relief from the stay.

As a final matter, State Mutual attempted to present evidence of possible improper transactions by the debtor. Such evidence may be appropriate to secure other relief, but is not relevant to the question before the court.

IT IS THEREFORE SO ORDERED.